# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Vayda Herrera and Scott Conrad,

        Plaintiffs,

                      Case No.

    v.

Franklin Law Enforcement Officers Christopher Dziadowic,
David Crissey, Amy Hempe, Mark Iczkowski, Sgt. Jason Ireland,
Sgt. Jeremy Fadness, Detective Shawn Harrison, and
Lead Detective Melissa Tromp,

        Each in his or her individual capacity,

        Defendants.

# COMPLAINT

## I. NATURE OF ACTION

Plaintiffs Vayda Herrera and Scott Conrad bring this civil action under Title 42 U.S.C. §1983 against Franklin Police Department Law Enforcement Officers Christopher Dziadowic, David Crissey, Amy Hempe, Mark Iczkowski, Sgt. Jason Ireland, Sgt. Jeremy Fadness, Detective Shawn Harrison, and Lead Detective Melissa Tromp, in order to obtain monetary damages for injuries arising from the deprivation of rights secured to them by the Fourth and Fourteenth Amendments to

the Constitution of the United States of America.

## II. JURISDICTION AND VENUE

### A. Jurisdiction

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

### B. Venue

202. The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

### A. Plaintiff

301. The Plaintiffs, Vayda Herrera and Scott Conrad, are adult residents of the State of Wisconsin.

### B. Defendants

#### 1. Christopher Dziadowic

302. On information and belief, Defendant Christopher Dziadowic is an adult

resident of the State of Wisconsin.

303. At all times material to this lawsuit, Defendant Christopher Dziadowic was employed by the Franklin Police Department.

304. At all times material to this lawsuit, Defendant Christopher Dziadowic was acting within the scope of his employment.

305. At all times material to this lawsuit, Defendant Christopher Dziadowic was acting under color of state law.

### 2. David Crissey

306. On information and belief, Defendant David Crissey is an adult resident of the State of Wisconsin.

307. At all times material to this lawsuit, Defendant David Crissey was employed by the Franklin Police Department.

308. At all times material to this lawsuit, Defendant David Crissey was acting within the scope of his employment.

309. At all times material to this lawsuit, Defendant David Crissey was acting under color of state law.

### 3. Amy Hempe

310. On information and belief, Defendant Amy Hempe is an adult resident of

the State of Wisconsin.

311. At all times material to this lawsuit, Defendant Amy Hempe was employed by the Franklin Police Department.

312. At all times material to this lawsuit, Defendant Amy Hempe was acting within the scope of her employment.

313. At all times material to this lawsuit, Defendant Amy Hempe was acting under color of state law.

### 4. Mark Iczkowski

314. On information and belief, Defendant Mark Iczkowski is an adult resident of the State of Wisconsin.

315. At all times material to this lawsuit, Defendant Mark Iczkowski was employed by the Franklin Police Department.

316. At all times material to this lawsuit, Defendant Mark Iczkowski was acting within the scope of his employment.

317. At all times material to this lawsuit, Defendant Mark Iczkowski was acting under color of state law.

### 5. Jason Ireland

318. On information and belief, Defendant Jason Ireland is an adult resident of

4

the State of Wisconsin.

319. At all times material to this lawsuit, Defendant Jason Ireland was employed by the Franklin Police Department.

320. At all times material to this lawsuit, Defendant Jason Ireland was acting within the scope of his employment.

321. At all times material to this lawsuit, Defendant Jason Ireland was acting under color of state law.

### 6. Jeremy Fadness

322. On information and belief, Defendant Jeremy Fadness is an adult resident of the State of Wisconsin.

323. At all times material to this lawsuit, Defendant Jeremy Fadness was employed by the Franklin Police Department.

324. At all times material to this lawsuit, Defendant Jeremy Fadness was acting within the scope of his employment.

325. At all times material to this lawsuit, Defendant Jeremy Fadness was acting under color of state law.

### 7. Shawn Harrison

326. On information and belief, Defendant Shawn Harrison is an adult

resident of the State of Wisconsin.

327. At all times material to this lawsuit, Defendant Shawn Harrison was employed by the Franklin Police Department.

328. At all times material to this lawsuit, Defendant Shawn Harrison was acting within the scope of his employment.

329. At all times material to this lawsuit, Defendant Shawn Harrison was acting under color of state law.

### 8. Melissa Tromp

330. On information and belief, Defendant Melissa Tromp is an adult resident of the State of Wisconsin.

331. At all times material to this lawsuit, Defendant Melissa Tromp was employed by the Franklin Police Department.

332. At all times material to this lawsuit, Defendant Melissa Tromp was acting within the scope of her employment.

333. At all times material to this lawsuit, Defendant Melissa Tromp was acting under color of state law.

### IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On the morning of March 4, 2023, Plaintiffs suffered one of the worst

tragedies a family can endure – their baby boy Danil died in his sleep. They learned later from the autopsy that there was no discernable cause of death.

402. Danil died of undetectable and unpreventable Sudden Unexplained Death in Childhood (SUDC).

403. Danil had lived at home with his sibling, his father, Scott Conrad; his mother, Veda Herrera, and his great-grandmother, Karen Forseth.

404. Upon awaking around 6:30 a.m. and finding that Danil would not wake up, his parents, the Plaintiffs, immediately called 911, and Plaintiff Conrad began performing CPR.

405. Franklin police responded to the scene in emergency mode, and though Sgt. Patyk took over performing CPR on Danil around 6:40 a.m., Danil was already gone.

406. Franklin police noted that the house was being well taken care of, there was nothing out of the ordinary noted during their initial observation, and the family's emotions were genuine and appropriate for the incident.

407. The parents, Plaintiffs Herrera and Conrad, were interviewed and were cooperative; the police saw that there were many toys in the home for the children to play with.

408. Great-grandmother Forseth was interviewed and was cooperative,

describing Conrad and Herrera as good parents, and describing how, just the night before, they had hosted a family birthday party complete with a Friday fish fry, cake, presents, and balloons.

409. In a small office of the Plaintiffs' home, Franklin police did come across some THC wax and implements for its use and they seized those items.

410. No citations were issued and no arrests were made.

411. Two days later, on March 6, 2023, the Milwaukee County Medical Examiner conducted an autopsy in the presence of Franklin's lead Detective on this case – Detective Melissa Tromp.

412. The ME reported typical findings, minor bruising consistent with toddler play, and a hole in the heart that is not uncommon in small children, and the ME reported there was no injury or illness that would cause death nor signs of any other apparent cause of death.

413. On the following morning, March 7, 2023, Franklin police did a field test on the THC they had seized days prior from the Plaintiffs' home, and recorded the result as preliminarily positive for fentanyl. This was a false positive, and the THC contained absolutely no fentanyl, as confirmed by a later laboratory test.

414. Franklin PD officers knew from training and experience that their field testing equipment had a high rate of false-positive results and would not be reliable

enough to support a criminal charge unless a laboratory test were positive for fentanyl.

415. Franklin PD officers also knew from training and experience that a judge or magistrate was highly unlikely to sign a warrant for in the in-home arrests of grieving parents who had just gone through the most painful experience a parent can bear, for something minor like THC possession, which is legal in many surrounding jurisdictions, or on flimsy evidence of fentanyl possession that had a likelihood of being false.

416. On March 7, 2023, at approximately noon, Franklin PD, by Officer Jesse Hintz, interviewed two restoration professionals who had done work on the Plaintiffs' home on March 3, 2023. The employees represented that the home was in decent condition, and the children in the home appeared fine, normal, healthy, and excited for a birthday party upcoming over the weekend.

417. On March 7, 2023, at approximately 2 p.m., Franklin Law Enforcement Officers Christopher Dziadowic, David Crissey, Amy Hempe, Mark Iczkowski, Detective Shawn Harrison, Sgt. Jason Ireland, Sgt. Jeremy Fadness, and Lead Detective Melissa Tromp went to Plaintiffs home with a plan to conduct the in-home warrantless arrests of Conrad and Herrera.

418. Together, they arrested Vayda Herrera and Scott Conrad in their home, at approximately 2 p.m. in the afternoon, for drug possession.

419. According to Officer Dziadowicz, he was instructed to conduct the arrest by Detective Shawn Harrison.

420. Also without a warrant, Franklin police seized two cell phones from the home.

421. According to Officer Mark Iczkowski, Sgt. Jeremy Fadness instructed him to seize Conrad's cell phone from a counter in his home.

422. Franklin police did not have consent to conduct the warrantless arrest of Conrad and Herrera at home nor to conduct a search of their home or a seizure of property from it, and there were no emergency circumstances that required prompt action or precluded the Defendants from taking the necessary time to attempt to secure warrants.

423. Detectives Tromp and Harrison went to the home first, and gained entry under false pretenses, stating they were concerned about the elderly grandmother there in the wake of the tragedy that the family had endured in losing a child, and wanted to check on her and make sure she was taking her medications properly.

424. If the officers had stated that they were there to see if the Plaintiffs would voluntarily consent to an in-home arrest, the Plaintiffs would have denied the officers entry unless and until the officers had a warrant.

425. Once in the home, the detectives asked Herrera for a written

authorization to obtain the deceased child's medical records, which Herrera signed.

426. Detective Harrison then held Conrad in the home while he signaled for the remaining officers to enter to effectuate the Plaintiffs' arrests and the seizures of the Plaintiffs' cell phones.

427. Some of the Defendants and other Franklin PD officers transported Conrad and Herrera to the police station, detained them there in custody, and questioned them for hours, prior to releasing them around 6:30 p.m. on March 7, 2023, without citations and without referring any criminal charges to the district attorney's office.

428. However, the police kept the Plaintiffs' cell phones, over the protests of the Plaintiffs.

429. Nearly two months later, on May 2, 2023, Detective Tromp exchanged emails with the Medical Examiner in which Tromp sought to get the ME to confirm that the baby's autopsy showed that he had fentanyl in his system. Dr. Lelinski wrote Tromp back making very clear that there was no fentanyl found in the baby's blood, and attached the toxicology report.

430. Dr. Lelinski made very clear that there were no illicit substances in the child's body that might have caused his death, and that the only two things identified on the toxicology report were related to chocolate – caffeine and theobromine –

consistent with what a child might be expected to eat at a birthday party.

431. Moreover, Tromp knew there was never any corroboration for the preliminary field test positive result for fentanyl, as opposed to the THC, which was visually consistent with a common THC product.

432. The results of the laboratory test of the Plaintiffs' THC became available to Detective Tromp in the fall of 2023. No trace of fentanyl had been detected.

433. However, these Franklin police offers were not finished using their official powers to treat these grieving parents unreasonably.

434. Over a year after Danil's death, on May 15, 2024, after it was very clear that there was no foul play in the death of the baby, and laboratory testing had found no trace of fentanyl in the Plaintiffs' THC, Detective Tromp telephoned Herrera and told her she could finally come to pick her deceased baby's clothing and her cell phone. Herrera proceeded immediately to the police department, where she was told once again that she had been deceived – she was not going to be permitted to take her deceased baby's items or her phone, instead, that story was a ploy to get her to show up for her own *second* arrest for the same underlying offense.

435. Franklin PD then called Conrad and told him that they had Herrera in custody and that he needed to turn himself in, which he did.

436. Plaintiffs were never charged or cited for any offense in connection with

12

this incident.

437. After the second arrests, Franklin officers referred charges for child neglect and THC possession to the district attorney's office.

438. In referring the charges, Franklin officers were motivated to attempt to avoid liability for their unreasonable first arrests and unreasonable treatment of Plaintiffs, and *not* any probable cause.

439. The prosecutor reviewed the case and saw no evidence of child neglect. The district attorney's office decided not to prosecute the THC possession charge, either.

440. The prosecutor issued a no prosecution letter in March, 2025.

## V. VIOLATIONS OF LAW

### A. Fourth and Fourteenth Amendments

501. The Defendants conducted warrantless in-home arrests of Plaintiffs, in violation of their constitutional rights to be free of unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

502. The Defendants excessively detained Plaintiffs after their arrest without obtaining or even attempting to obtain a judicial determination of

probable cause, and when there were no administrative steps to be completed.

503. The Defendants seized cell phones from Plaintiffs home without a warrant or consent.

504. The Defendants treated Plaintiffs unreasonably in violation of the Fourth Amendment.

505. Each of the Defendants knew that Plaintiffs' constitutional rights were being violated, and yet each of them intentionally failed to intervene to prevent the unlawful arrests and detentions, despite having a realistic opportunity to do so, and instead, facilitated these violations of the Plaintiffs' constitutional rights.

## VI. DAMAGES AND EQUITY

### A. Damages

601. By virtue of unlawful actions alleged above, the Plaintiffs have suffered losses of their rights to be free from unreasonable searches and seizures.

602. The Plaintiffs have also suffered loss of liberty, emotional distress, embarrassment, humiliation, loss of reputation, financial losses, and other damages for which they should be compensated in an amount deemed just by the Court.

603. Because the acts of the individual Defendants that are alleged herein were

14

carried out maliciously or with reckless disregard for the Plaintiffs' fundamental rights, the Plaintiffs seeks awards of punitive damages against the individual Defendants in amounts sufficient to deter them and other law enforcement officers from repeating such behavior in the future.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. DEMAND FOR JURY TRIAL

801. The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant judgment against the Defendants, awarding her:

901. Monetary damages in an amount that will fairly compensate them for their injuries;

902. Punitive damages in amounts that will deter the Defendants and other law enforcement officers from repeating such conduct in the future;

903. Their costs, attorneys' fees, and litigation expenses as well as any further relief this Court deems just.

Dated this 2nd day of March, 2026.

Respectfully submitted,

Scott Conrad and
Veyda Herrera,

Plaintiffs, By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
ANDREA J. FARRELL
State Bar No. 1064773

1025 Quinn Dr., Suite 500
Waunakee, WI 53597
Phone: (608) 283-6001
Facsimile: (608) 283-0945
E-mail: jsolson@scofflaw.com
ajf@scofflaw.com

/s/Jeff Scott Olson

/s/Andrea J. Farrell

16

ATTORNEYS FOR PLAINTIFFS